[Civ. No. 27449. First Dist., Div. One. Nov. 9, 1970.]

DICK DARE et al., Plaintiffs and Appellants, v.
LAKEPORT CITY COUNCIL et al., Defendants and Respondents.

**COUNSEL**

Crump, Bruchler & Crump for Plaintiffs and Appellants.

W. J. Harpham for Defendants and Respondents.

**OPINION**

**ELKINGTON, J.**—Appellants were proponents of an initiative petition filed with the Lakeport City Council which was the governing body of Lakeport Municipal Sewer District No. 1. The petition concededly met the requirements of Elections Code sections 4000-4023 and 5150-5162. Upon advice of its counsel that the petition's object was not a proper subject of the initiative process the city council "refused" the petition. Its proponents then sought by superior court mandate proceedings to compel the city council to accept, and thereafter take proper action on, the petition. Following a trial, the supe-

rior court found against the proponents and entered judgment denying mandate. It is from that judgment that the instant appeal is taken.

Lakeport is what is commonly known as a general law city; it does not function under a municipal charter. Lakeport Municipal Sewer District No. 1 is a regularly organized municipal sewer district, governed, as stated, by the Lakeport City Council. The sewer district contains within its boundaries all of Lakeport and some outside territory.

The city council had enacted Ordinance No. 427, "Providing for and establishing the method of prescribing rules, regulations, rates, payment and collection of the various service charges for the operation of the sewerage system thereof, and fixing the penalty for the violation thereof." As relevant the ordinance provided: "Section V. Maintenance Fees: The City Council shall prescribe by Resolution, the charges, times and manner of collection, of all sewer maintenance fees.

"The City Council may by Resolution, classify, or define various kinds of domestic sewage in accordance with their relative effects upon the operation of the sewerage system, and may provide for varying maintenance charges, in accordance with the relative difficulty or cost to the District of acceptance and treatment thereof.

"Section VI. Uniformity of Rules. All rules, fees, charges, or regulations provided for by this Ordinance shall be uniform throughout the District. . . ."

The initiative petition would have amended Ordinance 427 by adding the following paragraphs:

"(A) The maintenance fee to be collected from each domestic user shall be based upon the minimum water usage for which the City bills each domestic consumer, that is, it may be more or less than 100% of the minimum water billing per residence, or per residence structure as the case may be, and in any event it shall be a flat monthly charge for all private residences.

"(B) The maintenance fee to be collected from each commercial user shall be based upon the water consumption of such commercial user, as shown by the water meter of such consumer; and may be equal to or a percentage, whether more or less than 100% of the water billing for such user for the same period.

"(C) In each case where no metered water is supplied to a commercial user, at the option of the user, his water supply may be metered at his cost, or the District may provide for determining the fee based on the nearest like metered user.

"(D) In all cases in which a commercial user's water consumption, or a substantial portion thereof, does not produce sewage, he shall be entitled to a hearing thereon, and credit for the portion of the water consumption not resulting in sewage. The procedures, rules and regulations for such hearings and determinations shall be prescribed by resolution."

The principal issues presented to this court seem to resolve themselves to the question whether Ordinance 427, sections V and VI, and the proposed initiative amendment are, or would be, an ordinance "providing for tax levies."

California's Constitution, article IV, section 23 (the substance of which was formerly found in article IV, section 1, repealed 1966), provides that the *referendum* power does not lie to "statutes providing for tax levies or appropriations for usual current expenses of the State." Article IV, section 25 (also formerly part of article IV, section 1), provides: "Initiative and referendum powers may be exercised by the electors of each city or county under procedure that the Legislature shall provide." The Legislature has so provided. Election Code sections 4000-4023 and 4050-4057 respectively establish such procedures for municipal initiative and referendum elections. (See also Election Code sections 3700-3721, 3750-3754, 5150-5162, and 5200-5203 relating to counties and districts.)

However, *Geiger* v. *Board of Supervisors*, 48 Cal.2d 832, 836 [313 P.2d 545], and *Hunt* v. *Mayor & Council of Riverside*, 31 Cal.2d 619, 623-630 [191 P.2d 426], have held respectively that county and municipal referendum powers cannot affect ordinances providing for "tax levies."

Although the foregoing authorities deal generally with *referendum* powers it is also the law that the *initiative* process does not lie with respect to statutes and ordinances "providing for tax levies."

In *Myers* v. *City Council of Pismo Beach*, 241 Cal.App.2d 237 [50 Cal. Rptr. 402], while a city council was considering "An ordinance imposing a tax upon the privilege of transient [room] occupancy" an initiative petition was filed proposing an ordinance "prohibiting the city council from levying a room occupancy tax." The city council refused to consider the petition and mandate proceedings followed. The District Court of Appeal reversed a superior court decision giving effect to the petition. It stated (pp. 243-244):

"(1) A proposed initiative ordinance cannot be used as an indirect or backhanded technique to invoke the referendum process against a tax ordinance of a general law city, such as Pismo Beach. It will be recalled that the last paragraph of the proposed initiative ordinance provides: 'Any ordinance conflicting with any of the provisions of this ordinance either in whole or in part is herewith repealed.' Thus if the vote at the special election on the pro-

posed initiative ordinance were effective to make it a valid ordinance, the result would be to repeal Ordinance No. 114 passed by the city council on the evening of March 8, 1965, imposing a 4 percent room occupancy tax. Hence a type of referendum technique would have been discovered by which to attack and nullify a tax ordinance of a city like Pismo Beach which is governed by general laws. But article IV, section 1, of the California Constitution, expressly provides that the referendum powers therein reserved to the people do not extend to 'tax levies or appropriations for the usual current expenses of the State. . . .' The same exception applies to the political subdivisions of the state that are governed by general laws as distinguished from charters (see *Geiger* v. *Board of Supervisors, supra*). Thus the electors of Pismo Beach, which city derives its powers from the general laws, have no referendum power when it comes to repealing a tax ordinance. That which the electors have no power to do directly, they obviously cannot do indirectly.

"(2) Such a proposed initiative ordinance, even if approved by a vote of the electors, cannot be used as a means of tying the hands of the city council and depriving it of the right and duty to exercise its discretionary power in a taxation matter such as is here involved. . . ."

The imposition and collection of fees for the use of the facilities of Lakeport Municipal Sewer District No. 1 must reasonably be considered a taxation function. "Taxes" are defined as burdens imposed by legislative power on persons or property to raise money for public purposes. (*Yosemite Lbr. Co.* v. *Industrial Acc. Com.,* 187 Cal. 774, 783 [204 P. 226, 20 A.L.R. 994]; *Jones-Hamilton Co.* v. *Franchise Tax Bd.,* 268 Cal.App.2d 343, 348 [73 Cal.Rptr. 896].) And it has been expressly held that a *monthly sewage rate* imposed by a municipal ordinance for the connection and use of sewers is a *tax,* impost and toll. (*City of Madera* v. *Black,* 181 Cal. 306, 310-311 [184 P. 397]; see also *County of Los Angeles* v. *Southern Cal. Gas Co.,* 184 Cal.App.2d 169, 180 [7 Cal.Rptr. 471].) And both *assessment,* i.e., "the process of ascertaining and adjusting the shares respectively to be contributed by several persons toward a common beneficial object according to the benefit received" (Black's Law Dictionary (4th ed.), p. 149), and *collection,* are included in "the operation called levying the tax. The words are so used in the [C]onstitution." (*City of San Luis Obispo* v. *Pettit,* 87 Cal. 499, 503 [25 P. 694].)

The power of municipal sewer districts to assess and collect such taxes is derived from the state Constitution. Article XI, section 12, of that document states that the Legislature may vest in public or municipal corporations "the power to assess and collect taxes." Pursuant to that power the Legislature, by Health and Safety Code section 5471, has enabled the

legislative body of a municipal sewer district to "prescribe, revise and collect, fees, tolls, rates, rentals, or other charges for services and facilities furnished by it, . . ."

 It is worthy of note that the initiative powers here contended for by appellants would necessarily defeat the intent of section 5471 that the sewer district's governing body "prescribe" and "revise" the charges for its sewer facilities and services.

 We note further the holding of the California Supreme Court in *Simpson* v. *Hite,* 36 Cal.2d 125, 134 [222 P.2d 225], that "The initiative or referendum is not applicable where 'the inevitable effect would be greatly to impair or wholly destroy the efficacy of some other governmental power, the practical application of which is essential. . . .' " The taxing power "is probably the most vital and essential attribute of the government." (*Watchtower Bible & Tract Soc.* v. *County of Los Angeles,* 30 Cal.2d 426, 429 [182 P.2d 178].) The maintenance of sewer districts by their governing bodies must also be considered a vital governmental function.

The authorities we have cited impel us to hold, and we do hold, that the initiative process is not available to amend that portion of a municipal ordinance which provides that the city council shall determine the manner of fixing charges for the connection and use of sewer facilities.

It becomes unnecessary to resolve appellant's secondary contention relating to the eligibility of voters within the sewer district, but without the City of Lakeport, to vote on an initiative election.

The judgment is affirmed.

Molinari, P. J., and Sims, J., concurred.